# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| National Diagnostic Imaging, LLC, | ) | **CASE NO. 1: 15 CV 1945** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Pine Palms Management, LLC, et al., | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| Defendant. | ) | |

### INTRODUCTION

This matter is before the Court upon Plaintiff's Motion for Judgment on the Pleadings (Doc. 15).  Also pending is Defendants' Motion for Judgment on the Pleadings (Doc. 17).  This is a breach of contract case.  For the reasons that follow, plaintiff's motion is GRANTED and defendants' motion is DENIED.  All claims remain pending.

### FACTS

Plaintiff, National Diagnostic Imaging, LLC, filed this lawsuit in state court against defendants, Medical Care, LLC, n/k/a Pine Palms Management ("Pine Palms") and Medical Care

1

PLLC ("Medical Care") for actions arising out of a contractual relationship between plaintiff and Pine Palms.

On or about May 7, 2007, plaintiff and Pine Palms entered into an agreement ("Agreement") pursuant to which plaintiff agreed to provide certain tele-radiology services for Pine Palms.  The Agreement provides for the application of Ohio law.  Pine Palms provides business management and medical practice services for Medical Care.  Medical Care, in turn, is a medical practice offering a variety of services to its patients.   Pursuant to the Agreement, plaintiff agreed to provide services including the reading and interpretation of diagnostic images.

The following provision is relevant to the Court's discussion:

RECITALS

A. [Medical Care] desires to arrange for certain professional radiology services, Including the reading and Interpretation of examinations performed for patients [Medical Care] who receive "Diagnostic Imaging" services....

The Agreement also contains a termination provision which provides as follows:

4.  Term and Termination

(a) Term.  This Agreement shall commence on the Effective Date and shall continue for one (1) year thereafter, unless terminated earlier pursuant to Section 4(b).  If either party does not terminate this Agreement in writing at least sixty (60) days prior to the end of any existing term, the Agreement will automatically continue for an additional term of one (1) year under the terms and conditions contained herein, time being of the essence.

(b) Termination.  Notwithstanding Section 4(a), this Agreement shall terminate upon the occurrence of any of the following events:

(I) Upon mutual agreement of [Medical Care] and plaintiff;

(ii) Immediately upon written notice by the non-breaching party, in the event of the breach by the other party of any provision of this Agreement...

2

Although not set forth in the complaint, it appears that for a number of years, Pine Palms sent plaintiff a certain volume of patient cases.  At some point in 2015, Pine Palms informed plaintiff that the volume of patient cases it would be sending to plaintiff would decrease as Pine Palms had decided to use a another tele-radiology service provider.  Plaintiff responded to Pine Palms that the Agreement did not allow for the reduction in the number of patient cases because it contains an exclusivity clause.  Defendant disputed this contention.

Thereafter, plaintiff filed this two count lawsuit.  Count one is a claim for breach of contract against Pine Palms.  Count two is a claim for tortious interference with contract against Medical Care.  The parties cross-move for judgment on the pleadings and each opposes the other's motion.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Where a motion for judgment on the pleadings is based on the argument that the complaint fails to state claim upon which relief may be granted, it is judged under the same standard of review as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

Thus, the allegations of the complaint must be taken as true and construed liberally in favor of the non-moving party. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  The complaint is not to be dismissed "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *See also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989).  Notice pleading requires only that a party be given "fair notice of what the

[claimant's] claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint must set forth "more than the bare assertion of legal conclusions."  *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).

"In practice, a. . .complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).  Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal review. *Fingers v. Jackson-Madison County General Hospital District,* No. 95-5903, 1996 WL 678233 (6th Cir. Nov. 21, 1996).  Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

## ANALYSIS

Plaintiff argues that the Agreement does not allow Pine Palms to reduce the number of patient cases it sends to plaintiff for review.  According to plaintiff, the Agreement contains an "exclusivity" clause either expressly or by implication.  Plaintiff argues that certain provisions in the Agreement demonstrate the parties' intent to create an exclusive relationship pursuant to which Pine Palms must send all of its patient cases to plaintiff for review.  Plaintiff points out that the Agreement provides that "Pine Palms desires to arrange for...professional radiology services, including the reading and interpretation of examinations performed for patients at the Center who receive Diagnostic Imaging services...."  The Agreement further provides that plaintiff "shall provide Professional Services to Patients during hours agreed to by [plaintiff]...."

4

According to plaintiff, this language indicates that "patients" means all patients receiving diagnostic imaging.  Plaintiff also points out that the Agreement contains a termination provision which would be rendered meaningless if the Court determines that an exclusivity clause is lacking.

In response, Pine Palms argues there is simply no language in the Agreement requiring that it send plaintiff all of its patient cases.  Pine Palms further notes that there is no quantity requirement at all.  Pine Palms points to a number cases in which courts have concluded that other tele-radiology agreements are exclusive in nature.  In those cases, the agreements contained the words "all" or "exclusive."

Under Ohio law[1], "[a]n enforceable contract may be created where there is an offer by one side, acceptance on the part of the other, and a meeting of the minds as to the essential terms of the agreement."  *McCarthy, Lebit, Crystal & Haiman Co. v. First Union Management, Inc.*, 622 N.E.2d 1093, 1097-98 (Ohio Ct. App. 8th Dist. 1993).  In order to form a valid contract, the parties "must have a distinct and common intention which is communicated by each party to the other."  *Id*. at 1098.

"An agreement is enforceable if it encompasses the essential elements of the bargain." *Mr. Mark Corp. v. Rush, Inc.*, 464 N.E.2d 586, 589 (Ohio Ct. App. 8th Dist. 1983).  Where the parties have reached an agreement on the critical terms of the transaction, the omission of less central terms does not render the agreement unenforceable.  *Id*.  Instead, courts may "supplement the parties' express or implied agreement about those essential elements with other terms

---

[1]      The Agreement expressly provides for the application of Ohio law.

implied by custom and practice or consonant legal doctrines."  *Id*.  The quantity term, however,

has historically been considered an essential term.

> Under Ohio law prior to the adoption of the UCC, a requirements contract must [have] some fixed conditions or circumstances from which the quantities involved in the contract can at least be approximated.  In those pre-UCC cases that have upheld requirements contracts as valid, the quantities needed may be ascertained with some degree of certainty, and the intention of the parties, it is presumed, was to contract with reference to such quantity. The UCC did not substantially change the common law in Ohio.

*H & M Landscaping Co., Inc. v. Abraxus Salt, L.L.C.*, 2010 WL 3441935 (8 th Dist. Ct. App.

Sept. 2, 2010)("The language from the document in the present case is not definite enough to

determine any amount.").

Upon review, the Court agrees with plaintiff.  Although the Agreement does not contain

the words "all" or "exclusive," a review of the remainder of the Agreement evidences the

parties' intent to create an exclusive relationship.  The Agreement contains a termination

provision which allows for the termination of the Agreement only in specific circumstances.

Thus, in the event the parties intended a non-exclusive arrangement, the termination provision

would be rendered wholly meaningless because Pine Palms could simply terminate the

Agreement by ceasing to send patient cases to plaintiff.   It is axiomatic, however, that Courts

should strive to avoid construing a contract in such a way so as to render any provision wholly

meaningless.  *See,*

*Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority*, 678

N.E.2d 519, 526 (Ohio 1997)("In the construction of a contract courts should give effect, if

possible, to every provision therein contained, and if one construction of a doubtful condition

written in a contract would make that condition meaningless, and it is possible to give it another

construction that would give it meaning and purpose, then the latter construction must obtain.). Because plaintiff's interpretation of the Agreement gives effect to all provisions in the Agreement, the Court finds that it is consistent with the parties' intent.

This interpretation is also consistent with other language in the Agreement. Pine Palms strenuously argues that the Agreement does not contain words such as "all" or "exclusive." Rather, the Agreement refers only to the provision of services to "patients at the Center who receive Diagnostic Imaging services...." Notably, however, this phrase is not modified by the words "some" or "a portion of" or any other language supporting defendant's interpretation that the parties intended that the arrangement would not be exclusive. In order to ascertain the parties' intent, the Court must look to the Agreement *as a whole*.[2] Here, when reading the entirety of the Agreement, including the termination provision, the Court finds that the parties intended that the arrangement be exclusive. This interpretation is underscored by the principle that a Court should strive to interpret a contract in a way that enforces the agreement rather than invalidates it. *See, 7 Med. Sys., L.L.C. v. Open MRI of Steubenville*, 2012 WL 2522646 (Oh. Ct. App. June 18, 2012)("since illusory contracts are not favored...the terms of the contract should be read to avoid the creation of an illusory contract").[3]

The Court further rejects defendant's argument that the parties entered into a series of unilateral contracts. In essence, defendant is claiming that the Agreement itself is not an

---

[2]    Notably, neither side argues that the Agreement is ambiguous.

[3]    Although the Court cannot rely on the fact that the parties do not dispute that Pine Palms sent plaintiff a certain volume of patient cases since 2007, the Court simply notes that its interpretation is not inconsistent with the parties' actions.

7

unenforceable contract.  Again, however, defendant's argument would require that the Court

wholly ignore the termination provision which both parties agreed to abide by in entering into

the Agreement.  The Court rejects defendant's argument that the parties simply "agreed to agree"

to enter into in unilateral contracts in the *future*.[4]

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Doc. 15) is

GRANTED and Defendants' Motion for Judgment on the Pleadings (Doc. 17) is DENIED.

---

[4]     Both sides cite a number of cases in support of their respective
positions.  In large measure, the cases simply reach different
conclusions, although in some instances the language at issue
differs from the language at issue here.  *Compare*, *Consulting
Mgmg. Servs., Inc. V. Champion Serv. Corp.*, 1986 Ohio App
LEXIS 5745 (8th Dist. Ct. App. Feb. 27, 1986)(court would not
read exclusivity clause into agreement and dismissal was
warranted);  *Radiology Professional Corp. v. Trinidad Health
Ass'n, Inc.*, 577 P.2d 748 (Colo S. Ct. 1978)(overturning jury
verdict where contract requiring radiologist to furnish "all
radiology services...during the terms of the Agreement" did not
amount to exclusive services agreement); *with Torncello v. United
States*, 681 F.2d 756 (Ct. Cl. 1982)(interpreting contract estimating
one pest call per month to be a requirements contract); *Greater
Houston Radiation Oncology, P.A. v. Sadler Clinic Ass'n, P.A.*,
384 S.W.2d 875 (Tx. Ct. App. 2012)(court concluded that
agreement pursuant to which radiologist agreed to provide "those
professional radiology services necessary to operate the Center"
amounted to exclusive relationship); *Cardiovascular Servs., Inc. v.
West Houston Heatlh Care Group, Inc.*, 1995 Tex. App. LEXIS
2192 (Tex. Ct. App. 1995)(construing contract to include an
exclusivity provision where contract required the provision of
services "on a 24-hour a day, 7-day a week basis" so as to avoid
issues of mutuality of obligation).

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/16/16